UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                 Case No. 16-20081

vs.                                          HON. MARK A. GOLDSMITH

RARSHIEM K. WILSON,

    Defendant.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR COMPASSIONATE**
**RELEASE (Dkt. 28)**

After pleading guilty to conspiracy to distribution of methamphetamine and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(C), Defendant Rarshiem Wilson was sentenced to 84 months' imprisonment. Judgment (Dkt. 19). Wilson is currently incarcerated at the McDowell Federal Correctional Institution (FCI McDowell) in Welch, West Virginia. His projected release date is May 18, 2022.

Wilson received his first dose of the Pfizer-BioNTech vaccine on March 23, 2021, and his second dose on April 13, 2021. Bureau of Prisons (BOP) Immunization Records at PageID.507 (Dkt. 30-5). Subsequently, on June 2, 2021, Wilson, proceeding pro se,[1] filed the instant motion for compassionate release, arguing that he should be released because his health conditions—which allegedly include his obesity, hypertension, status as a smoker, "weakened immune system," and

---

[1] In his motion, Wilson specifically requests that he be permitted to proceed without counsel. Mot. at 2. Accordingly, the Court did not appoint counsel to represent Wilson in connection with his motion.

"mental issues and severe depression"—render him vulnerable to COVID-19 (Dkt. 28).[2] The Government filed a response, arguing that Wilson's stated reason for release is non-compelling in light of the fact that he is now fully vaccinated (Dkt. 31).[3] Wilson filed a reply, arguing that his vaccination status should not preclude him from being released (Dkt. 32).

The Court agrees with the Government that Wilson's fear of contracting COVID-19 is a non-compelling reason for release in light of the fact that Wilson is now fully vaccinated. Further, the § 3553(a) factors do not support release. Accordingly, the Court denies Wilson's motion.[4]

## I. DISCUSSION

The First Step Act (FSA) modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Ruffin, 978 F.3d 1000, 1003–1004 (6th Cir. 2020).[5] Before granting a compassionate-release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons

---

[2] Wilson asks that the Court reduce his sentence to time served or, alternatively, sentence him to home confinement. To the extent that Wilson seeks home confinement under the Coronavirus Aid, Relief, and Economic Security Act, § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (2020), his motion is denied because the BOP has sole discretion to grant such relief. See United States v. Mattice, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020). However, the Court may consider Wilson's request for home confinement under 18 U.S.C. § 3582(c). Courts granting compassionate release pursuant to that statute may convert a defendant's remaining sentence term to a term of supervised release and impose an initial term of home detention. See, e.g., United States v. Amarrah, 458 F. Supp. 3d 611, 620–621 (E.D. Mich. 2020).

[3] The Government filed a response on July 6, 2021. Resp. (Dkt. 30). After discovering that he had "inadvertently filed an interim draft and not the final draft of the Government's Response," the AUSA assigned to this matter filed an amended response. Am. Resp. at 1 (Dkt. 31).

[4] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

[5] An incarcerated defendant must comply with the mandatory exhaustion requirements of § 3582(c) before filing a motion for compassionate release. Here, the Government concedes that Wilson has satisfied the exhaustion requirement. See Am. Resp. at 4.

warrant [a sentence] reduction," (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)." United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so. 18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13. Jones, 980 F.3d at 1109. It has further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the [FSA], district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." Id.

A. Extraordinary and Compelling Circumstances

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release. United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020). Rather, a defendant must point to specific conditions that create a higher risk that the defendant will contract the virus. To determine whether a defendant's specific conditions render him particularly vulnerable to contracting COVID-19, courts generally consult the guidance on high-risk factors published by the Centers for Disease Prevention and Control (CDC). See United States v. Elias, 984 F.3d 516, 521 (6th Cir. 2021).

3

Wilson argues that he fears that his obesity, hypertension, status as a smoker, "weakened immune system," and "mental issues and severe depression" render him vulnerable to COVID-19. While some of these conditions may increase unvaccinated individuals' risks of severe illness from COVID-19,[6] the same is not true for vaccinated individuals. According to the CDC, the vaccine reduces the risk of COVID-19 among people who are fully vaccinated "by 90 percent or more."[7] Further, regarding people who are vaccinated but still get COVID-19, the vaccine has been shown to "provide protection against severe illness and hospitalization among people of all ages eligible to receive [it]." Id. Significantly, "[t]his includes people . . . who are at higher risk of severe outcomes from COVID-19." Id. Because Wilson received the second dose of the Pfizer-BioNTech vaccine on April 13, 2021—well over two weeks ago—he is now fully vaccinated, meaning that he is protected to the fullest extent by the vaccine.[8] As a result, Wilson's fear of contracting the virus or suffering severe illness is not a compelling reason to release him. See United States v. Collier, No. 2:15-cr-20774-1, 2021 WL 1560079, at *2 (E.D. Mich. Apr. 21, 2021) ("Courts in the Eastern District of Michigan routinely refuse to find that a fully vaccinated prisoner has an extraordinary and compelling reason for release because of their fear of contracting COVID-19.") (collecting cases).

---

[6] See CDC, "People with Certain Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/FKT4-6SD6] (recognizing obesity, hypertension, status as a smoker, immunocompromised state—but not depression—as conditions that "can" make an individual more likely to suffer severe illness from COVID-19).

[7] CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/WF6S-APG5].

[8] CDC, "COVID-19 Vaccines That Require 2 Shots," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html [https://perma.cc/744W-B5MX].

In his reply, Wilson argues that his vaccination status should not preclude him from being granted release, for several reasons. First, Wilson argues that the vaccine is not 100% effective. Reply at 4. This argument is easily rejected. As discussed above, the vaccine is both highly effective at preventing infection as well as severe illness. Next, Wilson suggests that his fear of variants of the virus remains a compelling reason to release him. Id. While various COVID-19 variants—particularly the Delta variant—are on the rise, the CDC currently recommends that the vaccine "offer[s] protection against most variants currently spreading in the United States," rendering vaccinated prisoners' fears of severe illness from variants non-compelling.[9] Finally, Wilson argues that the conditions at FCI McDowell increase his risk of infection. Reply at 4. However, the available data undercuts this argument. Currently, of the 1,418 inmates at FCI McDowell,[10] 795 have been vaccinated.[11] Further, there are currently no confirmed active cases of COVID-19 among inmates and only one active staff case at FCI McDowell.[12]

The Court holds that Wilson's vaccination status renders his fear of COVID-19 a non-compelling reason to grant him release.[13] Even if Wilson had shown the existence of extraordinary

---

[9] CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/WF6S-APG5].

[10] BOP, "FCI McDowell," https://www.bop.gov/locations/institutions/mcd/ [https://perma.cc/65TU-R6P5].

[11] BOP, "COVID-19 Vaccine Implementation," https://www.bop.gov/coronavirus/ [https://perma.cc/L8U7-J96Z].

[12] BOP, "COVID-19 Cases," https://www.bop.gov/coronavirus/ [https://perma.cc/L8U7-J96Z].

[13] The Court is not penalizing Wilson for his decision to get vaccinated. Because the availability of highly effective vaccines renders a prisoner's fear of COVID-19 non-compelling, courts routinely deny compassionate release to prisoners who have been offered but refused the vaccine. United States v. Csiki, No. 19-20256, 2021 WL 1884702, at *2 (E.D. Mich. May 11, 2021) (collecting cases). The Court commends Wilson on his sensible decision to get vaccinated—the most effective action to protect himself and his community from the virus.

and compelling circumstances, his release would still be unwarranted based on the § 3553(a) factors, as explained below.

### B. Section 3553(a) Factors

The § 3553(a) factors weigh against granting Wilson release. Before granting a sentence reduction under the FSA, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the defendant.

Wilson has been convicted for multiple crimes throughout his life; he has been convicted for drug crimes as well as violent crimes such as weapons offenses, domestic violence, and domestic assault. Presentence Report ¶¶ 30–39 (Dkt. 30-2). During a previous imprisonment for selling drugs, Wilson was disciplined four times, including for assault and battery. Id. ¶ 38. Regarding his underlying conduct for the offense for which he is presently incarcerated, Wilson twice sold methamphetamine and heroin to an undercover officer. Id. ¶¶ 10–11. After the second drug transaction, authorities continued to monitor Wilson; they conducted a traffic stop of Wilson in his car and found in his car three loaded firearms, one of which had the serial number obliterated. Id. ¶ 11. Authorities also executed a search of Wilson's home, where they discovered additional firearms, ammunition, and drugs. Id. While incarcerated for the instant drug offense, Wilson has been disciplined several times for offenses such as assault and possession of a hazardous tool. Inmate Discipline Data (Dkt. 30-3).

Wilson argues that his offense—conspiracy to distribute methamphetamine and cocaine—is not serious because it "do[es] not reflect the use of any weapon or violence." Reply at 6. To the contrary, the fact that loaded firearms were found in Wilson's car and home reflects that he was armed and prepared to use violence to further the objectives of the drug conspiracy. Further,

6

even absent physical violence, there can be no doubt that Wilson's crime was serious. Methamphetamine and cocaine are categorized as Schedule II controlled substances due to their dangerousness, high potential for abuse, and ability to cause severe psychological or physical dependence among users. The circulation of addictive drugs such as these presents a grave danger to the community's health and wellbeing.

Wilson also argues that his behavior while incarcerated—namely, his disciplinary record and his completion of the drug rehabilitation program—weigh in favor of granting him release. Id. However, as discussed above, his disciplinary record has not been perfect. Further, while Wilson's completion of the drug rehabilitation is laudable, the Court is not persuaded that his completion of this program is, alone, enough to entitle him to release. Given Wilson's extensive criminal history—which includes numerous drug offenses—and the nature of his involvement in the instant drug conspiracy, there is a real risk that if released at this time, Wilson would commit additional drug offenses. Releasing Wilson at this time would, therefore, endanger the public's safety and fail to promote respect for the law.

Accordingly, the § 3553(a) factors weigh against granting Wilson's motion.

## II. CONCLUSION

For the reasons stated above, Wilson's motion for compassionate release (Dkt. 28) is denied.

SO ORDERED.

Dated: August 5, 2021  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2021.

                                              s/Karri Sandusky
                                              KARRI SANDUSKY
                                              Case Manager